FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 12, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RENATA S. MOON, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>WASHINGTON STATE UNIVERSITY, a Washington State Agency; KIRK SCHULZ, President of Washington State University, in his official and individual capacities; DARYLL DEWALD, Chancellor of Washington State University, Spokane, in his official and individual capacities; JOHN TOMKOWIAK, former and founding Dean of Washington State University Elon S. Floyd, a Washington State Agency; JAMES RECORD, Dean of Washington State University Elon S. Floyd College of Medicine, in his official and individual capacities; DAWN COOPER, Dean for Accreditation, Assessment and | No. 2:24-cv-00327-RLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

Evaluation, in her official and individual
capacities; RADHA NANDAGOPAL,
Associate Dean for Faculty Affairs and
Continuing Professional Development,
in her official and individual capacities;
GAIL CHERMAK, Association Dean of
Faculty and Affairs, in her individual
capacity; LISA BURCH-WINDREM,
Assistant Dean for Student Affairs, in
her official and individual capacity;
JEFF HANEY, Chair of Department of
Medical Education and Clinical
Sciences, in his official and individual
capacities; KEN ROBERTS,
Department Chair of Translational
Medicine & Physiology and former
Interim Associate Dean for Clinical
Education, Department Chair of
Translational Medicine & Physiology
and Interim Associate Dean for Clinical
Education, in his official and individual
capacity,

                        Defendants.

BEFORE THE COURT is a motion to dismiss filed by Defendants Kirk

Schulz, Daryll Dewald, John Tomkowiak, Dawn Cooper, Radha Nandagopal, Gail

Chermak, Lisa Burch-Windrem, and Ken Roberts (ECF No. 14). Plaintiff is

represented by Karen Osborne and Simon Serrano. Defendants are represented by

Luther Caulkins, Paul Lawrence, Zachary Pekelis, Meha Goyal, and W. Scott

Ferron. The matter was submitted to the Court without oral argument.

Plaintiff Renata S. Moon, M.D., was a contract professor at Washington

State University's Elson S. Floyd College of Medicine (ESFCOM). In her

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 2

Complaint, Dr. Moon alleges school administrators violated her constitutional rights to free speech, petition, and association by punishing her for academic speech in the classroom, compelling specific types of speech, and retaliating against her for engaging in private speech that occurred outside the classroom. Dr. Moon asserts eight causes of action under 42 U.S.C. § 1983 and one claim under the Washington State Constitution.

Eight of the 10 individual defendants have filed for dismissal under FRCP 12(b)(6), arguing: (1) the Complaint fails to allege personal participation; (2) qualified immunity bars the § 1983 claims for damages; and (3) there is no claim available under the Washington State Constitution.

For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part. The motion is granted as to Defendants Kirk Shulz, Darryl Dewald, and Radha Nandagopal. The Court also grants the Motion to Dismiss claims against the remaining moving defendants in their official capacities. Finally, the Court grants the moving defendants' Motion to Dismiss as to claims under the Washington State Constitution.

BACKGROUND

Dr. Moon has been a board-certified pediatrician since 1996. Over the course of her career, she has worked as a pediatrician in clinical practice, as a pediatric hospitalist, and has volunteered and worked as a teacher at several

medical schools. In August 2017, Dr. Moon was hired to teach a course for the newly formed ESFCOM. Over the next few years, she taught different classes and provided off-campus instruction in clinical settings.

*Allegations of Student Mistreatment*

On March 24, 2021, Defendant Jeff Haney, M.D., Dr. Moon's supervisor and chair of the Department of Medical Education and Clinical Sciences, met with Dr. Moon to discuss student mistreatment allegations made by some of her year 1 and 2 Art & Practice of Medicine (APM) students. According to the Complaint, at the meeting Dr. Haney removed Dr. Moon from teaching and instructed her to have no further contact with any medical students pending an investigation.

The same day, Dr. Moon wrote a letter to Dr. Haney summarizing the meeting and providing an extensive explanation regarding each of the allegations.

In a follow up email on June 11, 2021, Dr. Haney characterized the students' allegations as bias and microaggressions regarding race; issues with professionalism; and statements discounting scientific evidence regarding the COVID-19 vaccine.

In a written report of his investigation received by Dr. Moon on September 21, 2021, Dr. Haney listed his actions upon being notified about the allegations, the actions he took to investigate the situation, his investigation findings, a plan for Dr. Moon going forward, and steps for implementation.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 4

1    The report's plan for Dr. Moon included various steps, such as completion

2  of an Intercultural Development Inventory, review of the Inventory, reporting back

3  to the chair on a scheduled basis, identification of a faculty coach/partner to share

4  the plan and monitor tasks, utilizing a faculty coach/partner to observe work in

5  clinical and small group settings, and a timeline for returning to clinical coaching

6  and teaching. According to the report, Dr. Moon agreed to these steps. The

7  Complaint alleges Dr. Moon was additionally required to attend trainings on her

8  own time, and she was required to attend faculty development sessions that were

9  politically charged and biased.

10    In the summer of 2021, Dr. Moon "appealed" Dr. Haney's actions to Dr.

11  Ken Roberts. ECF No. 1 at 61. Dr. Moon met with Dr. Roberts and expressed

12  concern over the student mistreatment investigation and on-going requirements for

13  remediation. According to Dr. Moon, Dr. Roberts "agreed that she had been

14  wronged but the only solution he offered was that she quit." *Id*. at ¶ 182.

15    In the fall 2021 term, Dr. Moon returned to teaching a year 1 APM group.

16  During the fall term, Dr. Moon "appealed" Dr. Haney's actions to Dr. Dr. Gail

17  Chermak. *Id*. at 58. Dr. Moon met with Dr. Chermak and discussed the remedial

18  measures contemplated by Dr. Haney. Dr. Haney met with Dr. Chermak after this

19  meeting and subsequently issued an email to Dr. Moon, apologizing for flaws in

20  the Student Mistreatment investigation process. Drs. Chermak, Burch-Windam,

and Cooper were copied on this email.

Dr. Moon's contract was renewed on June 30, 2022, and she began teaching year 1 and 2 APM students for the 2022-23 academic school year. During the fall of 2022, Laura Fralich sent a letter to APM Year 1 faculty, advising the role ADM small group faculty was "that of discussion *facilitator*, rather than teacher," utilizing "session guides prepared by the directors of the Health Equity and Ethics curriculum" to explore "[t]opics such as conflict of interest, racism, informed consent, bias, end of life decision-making and confidentiality." ECF No. 1-3 at 139.

*COVID 19 Roundtable*

On December 1, 2022, Dr. Moon informed ESFCOM she would be absent from her December 6 and December 8 classes for personal reasons and she received confirmation that substitutes would teach both classes. On December 7, 2022, Dr. Moon testified before Senator Johnson at a roundtable event in Washington D.C. titled, "Covid-19 Vaccines: What They Are, How They Work, and Possible Causes of Injuries." ECF No. 1 at ¶ 209.

Despite having previously sent a press release to the roundtable organizers not mentioning Washington State University and noting she did "not speak on behalf of any past or current institutions with which she is affiliated," the caption of the video broadcast of the event included the descriptor, "Clinical Associate

Professor, WSU College of Medicine." *Id.* at ¶¶ 211-12. During her testimony, Dr. Moon stated she was speaking as a physician and did not make any claims she was speaking on behalf of any entity including ESFCOM.

According to Dr. Moon, her testimony included statements that myocarditis in children had "gone very high" and there had been "a massive increase" after the COVID vaccines had "rolled out" for children. *Id.* at ¶ 218. She pointed out that if she did not say the COVID vaccine was safe and effective, her license was at risk, but that the vaccine package insert did not include the information she needed to provide to patients to give informed consent, including potential risks and benefits. She gave this testimony as anecdotal based on her own experience and opinion and represented herself as a pediatrician speaking for the well-being of the nation's children. She pointed out other "reputable countries" had discontinued use of COVID vaccines for minors. *Id.* at ¶ 223.

On February 24, 2023, Dr. Haney contacted Dr. Moon by email and stated he and Dr. Record would like to meet with her regarding a "recent occurrence." *Id.* at 224. When asked what it was regarding, Dr. Haney indicated that it pertained to her participation in the COVID-19 roundtable and that he planned to have someone from human resources present. On March 1, 2023, Dr. Haney canceled the meeting because Dr. Moon had asked to bring someone to the meeting with her but had not said who she would bring. The meeting was never rescheduled.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 7

On March 3, 2023, Dr. Haney and Dr. Record sent a memo to Dr. Moon outlining their concerns about her participation in the December 7, 2022 roundtable. The memo referenced specific sections of the Faculty Manual and raised concerns about: (1) the failure to request and report absences; (2) possible inappropriate representation of Faculty Role and the College/University; (3) possible ethics policy breach by attending the forum without taking proper leave, to be forwarded to the WSU Office of Internal Audit for review; (4) physician professionalism based COVID-19 vaccine information; and (5) expectations of evidence-based medical education. With respect to physician professionalism, the memo indicated the Washington Medical Commission "has asked the public and practitioners to report possible spread of misinformation. There are components of your presentation that could be interpreted as a possible spread, as such we are ethically obligated to make a report to the WMC to investigate possible breach of this expectation." *Id.* at ¶ 229; ECF No. 1-3 at 244-45. With respect to expectations of medical education, the memo indicated, "The expressed views will require us to review your teaching assignments in the frame of the education [of] our students." *Id.*

On March 16, 2023, the Chief Audit Executive requested a meeting with Dr. Moon via email. Dr. Moon and the Chief Audit Executive exchanged a few emails, and Dr. Moon received no other communication regarding the matter.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 8

On June 29, 2023, Dr. Moon received a non-renewal of contract letter from Dr. Haney and Dr. Record. Her 2022-23 faculty contract expired on June 30, 2023.

On July 10, 2023, Dr. Haney sent a written statement to the Washington Medical Commission indicating Dr. Moon had participated in the December 7, 2022 roundtable, which could be perceived as possible spread of misinformation. He included a link to the video recording of the roundtable with references to Dr. Moon's testimony. The Washington Medical Commission then opened an investigation regarding Dr. Moon on August 1, 2023, and on January 26, 2024, the Commission closed the case because Dr. Moon's license had expired and she had moved out of state.

*Dr. Moon's Lawsuit*

In September 2024, Dr. Moon filed a Complaint alleging eight causes of action under 42 U.S.C. § 1983:

1. First Amendment violations of her right to free speech content and viewpoint discrimination;
2. First Amendment violation of her right to free speech based on retaliation;
3. First Amendment violation of her right to free speech based on compelled speech;
4. First Amendment violation of her right to free speech of petition and assembly;
5. First Amendment violation of the right to be free from unconstitutional conditions by conditioning employment on a willingness to surrender various constitutional rights;
6. Fourteenth Amendment violations of the right to due process;
7. Fourteenth Amendment violation of the right to equal protection;

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 9

8.  Fourteenth Amendment violation of the right to due process based on defamation leading to the loss of employment.

An additional cause of action is alleged for violation of the Washington State Constitution. Dr. Moon seeks declaratory and injunctive relief, damages, and attorney fees.

## STANDARD OF REVIEW

Rule 12(b)(6) allows a party to move for dismissal if the plaintiff has failed to state a claim upon which relief can be granted. FRCP 12(b)(6). Dismissal under this rule is proper only if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a 12(b)(6) motion, the court accepts the allegations in the complaint as true and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, this does not require the Court "to accept as true legal conclusions couched as factual allegations." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007); see also *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (requirements of notice pleading are met if plaintiff makes a

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 10

short and plain statement of their claims). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The allegations must be enough to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. It is not enough that a claim for relief be merely "possible" or "conceivable;" instead, it must be "plausible on its face." *Id.* at 556, 127 S.Ct. 1955.

ANALYSIS

1. Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a complaint must allege (1) the conduct complained of was committed by a person acting under color state law and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986). A government official "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft*, 556 U.S. at 676, 129 S.Ct. 1937. Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 11

1    Despite the absence of *respondeat superior* liability, the Ninth Circuit has

2    held that an immediate supervisor may be held liable for a subordinate's violations

3    of the right to free speech if the supervisor knows about the violation and

4    acquiesces therein. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1075 (9th Cir.

5    2012). The supervisor need not specifically intend a constitutional violation. *See*

6    *id.* But the supervisor's acquiescence must take place while the constitutional

7    violation is "ongoing." *Riley's American Heritage Farms v. Elasser*, 32 F.4th 707,

8    724 (9th Cir. 2022).

9    A supervisor's involvement in an employee's free speech violation may be

10   demonstrated through direct evidence of knowledge and acquiescence. *See, e.g., id.*

11   at 724 (school board members notified of ongoing violation through a demand later

12   and then failed to remedy the policy). It may be also shown by way of plausible

13   inferences from the supervisor's job description. *See OSU Student Alliance*, 699

14   F.3d at 1076-77. However, "cabinet-level" officials responsible for supervising a

15   large operation are not automatically deemed responsible for violations committed

16   by lower-level officials. *See id.* at 1077.

17   WSU argues Dr. Moon's § 1983 claims against the eight moving defendants

18   must be dismissed because the Complaint fails to allege they personally

19   participated in a violation of her rights. Dr. Moon responds that the eight

20   defendants acted as supervisors who acquiesced in Dr. Haney and Dr. Record's

ongoing violations of her constitutional right to free speech. The Court agrees with Dr. Moon as to some of the Defendants, but not as to others. The Complaint's allegations as to each defendant is addressed in turn.

*Defendant Kirk Schulz*

Dr. Kirk Schulz is the President of WSU and has authority to employ, supervise, discipline, or terminate employees. He oversees and delegates authority to all other staff, including the other defendants, and has authority to review, approve, or reject the decisions of other University staff, faculty, and officials.

According to the Complaint:

Defendant Schulz is and was aware of the retaliatory and unconstitutional actions taken against Dr. Moon and did not instruct University staff and faculty, including other Defendants, to change or reverse those actions to comply with constitutional mandates. As president, Defendant Schulz authorized, approved, confirmed, sanctioned, and ratified the retaliatory and discriminatory decisions regarding Dr. Moon challenged herein.

ECF No. 1 at ¶18.

The Complaint alleges that before deciding not to renew Dr. Moon's contract, Dr. Haney and Dr. Record consulted with and acted at the direction of Dr. Schulz, and Defendant Dr. Darryl Dewald, Chancellor of Washington State University, Spokane, and Vice President of Washington State University Health Sciences.

The foregoing is insufficient to state a claim against Dr. Schulz. Despite

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 13

attaching numerous records to her brief, Dr. Moon does not demonstrate actual communications between Drs. Haney and Record and Dr. Schulz. Nor is there any demonstration that Dr. Schulz was notified of actions taken by Drs. Haney and Record prior to the non-renewal of Dr. Moon's contract. The Complaint's allegations that Dr. Schulz was aware of and approved the actions taken against Dr. Moon are conclusory allegations which appear to be based on nothing more than Dr. Schulz's position as president of WSU. Dr. Schulz's role may have given him authority over all WSU employees, including Drs. Haney and Record, but WSU is too large of an organization to permit an inference of knowledge and acquiescence. *See OSU Student Alliance*, 699 F.3d at 1076-77.

### *Defendant Daryll Dewald*

Dr. Daryll Dewald is the chancellor of Washington State University, Spokane, and a Vice President of Washington State University Health Sciences. In December 2022, Dr. Dewald was promoted to executive vice president for health services. ECF No. 1 at ¶ 20. In that role, Dr. Dewald oversees ESFCOM and other Colleges of the University and has authority over faculty recruitment, retention, and renewal and the review of faculty appointments, tenure, and promotions. *Id.* at ¶ 21.

According to the Complaint:

Defendant Dewald is and was aware of the retaliatory and unconstitutional actions taken against Dr. Moon and did not instruct

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 14

University staff and faculty, including other Defendants, to change or reverse those actions to comply with constitutional mandates. As executive vice president Defendant Dewald authorized, approved, confirmed, sanctioned, and ratified the retaliatory and discriminatory decisions regarding Dr. Moon challenged herein.

*Id.* at ¶¶ 22-23.

As stated above, the Complaint alleges that before deciding not to renew Dr. Moon's contract, Dr. Haney and Dr. Record consulted with and acted at the direction of Dr. Schulz and Dr. Dewald.

In briefing, Dr. Moon contends that Dr. Dewald is the immediate supervisor of Dr. Record and that Dr. Dewald authorized the "non-reappointment" of Dr. Moon. ECF No. 22 at 27-28. According to Dr. Moon, this is evidenced by the fact that he was copied on the letter notifying her that her appointment would not be renewed. *Id*. at 28.

The Complaint's allegations against Dr. Dewald fail for the same reasons as those pertaining to Dr. Schulz. While Dr. Dewald held a position of authority over all medical school employees, including Drs. Haney and Record, his authority is too far removed to permit an inference of knowledge and acquiescence. *See OSU Student Alliance*, 699 F.3d at 1076-77. Dr. Moon argues that Dr. Dewald was Dr. Record's immediate supervisor, but this fact is not set forth in the Complaint. The fact that Dr. Dewald was copied on a letter documenting non-renewal of Dr. Moon's contract fails to show Dr. Dewald was notified of the reasons for non-

1    renewal or that Dr. Dewald received notification while the alleged violations of Dr.

2    Moon's first amendment rights were on-going.

3                    *Defendant John Tomkowiak*

4          Dr. John Tomkowiak was the Founding Dean of WSU ESFCOM from its

5    establishment in 2015 until he stepped down on June 2, 2022. The Complaint

6    alleges Dr. Tomkowiak had direct supervisory authority over Dr. Haney, before

7    Dr. Record took over Dr. Tomkowiak's responsibility.

8          The Complaint alleges sufficient information against Dr. Tomkowiak. WSU

9    correctly points out that the Complaint fails to allege any direct evidence Dr.

10   Tomkowiak was aware of actions taken against Dr. Moon by Dr. Haney. However,

11   given Dr. Tomkowiak was Dr. Haney's direct supervisor, an inference of

12   knowledge and failure to act is permissible at this stage of the proceedings.

13                    *Defendant Dawn Cooper*

14         Dr. Dawn Cooper is the Associate Dean for Accreditation, Assessment, and

15   Evaluation. According to the Complaint, Dr. Cooper "had supervisory authority

16   over Defendant Haney, the process used to discipline Dr. Moon, and the process

17   for ending her employment at ESFCOM." ECF No. 1 at ¶ 43. The Complaint states

18   ESFCOM requires the following procedure for handling a report of student

19   mistreatment:

20         the report [must] be routed to the Office of Accreditation, Assessment
           and Evaluation. Upon receipt of a mistreatment report, the Associate

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 16

1   Dean for Accreditation, Assessment and Evaluation reviews the
2   report. After reviewing the report and consulting with the
    professionalism Excellence Advisory Committee, the Associate Dean
3   for accreditation, Assessment and Evaluation determines appropriate
    action.

4   *Id*. at ⁋ 135.

5       The Complaint includes documentation that Dr. Haney shared his student

6   misconduct investigation report with Dr. Cooper. *See* ECF No. 1-3 at 92 (Ex. H).

7       The foregoing is sufficient to state a claim against Dr. Cooper. According to

8   the Complaint, Dr. Cooper held a supervisory role over Dr. Haney. Furthermore,

9   given her role as Associate Dean for Accreditation, Assessment and Evaluation,

10  Dr. Cooper would have been involved in the student mistreatment investigation

11  report prepared by Dr. Haney. Her actual involvement is further supported by the

12  documentation that Dr. Haney shared his on-going plan for remediating Dr.

13  Moon's classroom conduct with Dr. Cooper. The Complaint therefore alleges

14  sufficient facts to infer Dr. Cooper was a supervising official who received notice

15  of an ongoing violation and failed to take corrective action.

16                          *Defendant Radha Nandagopal*

17      Dr. Radha Nandagopal is the Associate Dean for Faculty Affairs and

18  Continuing Professional Development. As part of the Dean's Cabinet, Dr.

19  Nandagopal was responsible for advising the Dean on major operational and

20  management issues and approving major policies and procedures relating to the

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 17

operation of the college.

According to the Complaint, Dr. Nandagopal "had supervisory authority over Defendant Haney, the process used to discipline Dr. Moon, and the process for ending her employment at ESFCOM." ECF No. 1 at ¶ 43. The Complaint also states Dr. Nandagopal was aware of the retaliatory and unconstitutional actions taken against Dr. Moon and failed to instruct personnel to change or reverse actions to comply with constitutional mandates. Additionally, the Complaint alleges that independently and in consultation with other defendants, Dr. Nandagopal is responsible for and participated in retaliatory and unconstitutional actions, including discipline and termination.

The foregoing is insufficient to state a claim against Dr Nandagopal. The Complaint does not cite any evidence of actual communications between Dr. Haney and Dr. Nandagopal regarding the student misconduct complaint or Dr. Moon's First Amendment activities. Dr. Nandagopal's job description does not place her in direct responsibility for the student misconduct investigation or the termination of Dr. Moon's contract. The conclusory allegation that Dr. Nandagopal had some sort of supervisory authority and was aware of actions taken against Dr. Moon and failed to take corrective action is insufficient to state a claim under § 1983.

*Defendant Gail Chermak*

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 18

Gail Chermak is the Associate Dean for Faculty Affairs. According to the Complaint, Dr. Chermak "had supervisory authority over Defendant Haney, the process used to discipline Dr. Moon, and the process for ending her employment at ESFCOM." *Id.* at ¶ 43.

The Complaint alleges Dr. Moon "appealed to Defendant Chermak, seeking assistance to resolve Defendant Haney's actions against her." *Id.* at 58. As part of this appeal process, Dr. Moon met with Dr. Chermak on September 9, 2021, "to discuss defects in the process" used to discipline her and "that she had been disciplined for exercising her academic freedom in the classroom based on discriminatory student evaluations." *Id.* at ¶ 169. The Complaint alleges Dr. Chermak agreed the process used was inadequate and she would advise the administration to improve the process. Dr. Chermak reportedly stated her personal position regarding student complaints and discouraged further appeals of the issue. Dr. Chermak did not instruct any other staff to rescind or change the "punishment against Dr. Moon." *Id.* at ¶ 174.

Dr. Chermak met with Dr. Haney to discuss issues raised in the September 9 meeting. Despite admitting policy and procedural defects, Dr. Chermak did not take any action or make any recommendation to correct the violations against Dr. Moon.

The foregoing is sufficient to state a claim against Dr. Chermak. The

1  allegation that Dr. Moon appealed Dr. Haney's actions to Dr. Chermack is

2  sufficient to allege knowledge of an ongoing violation. The further allegations that

3  Dr. Chermack had supervisory authority over Dr. Haney and that she failed to take

4  corrective action after being notified of an on-going interference with Dr. Moon's

5  First Amendment rights are sufficient to state a claim under § 1983.

6  *Defendant Lisa Burch-Windrem*

7      Dr. Lisa Burch-Windrem is the Assistant Dean for Student Affairs and part

8  of the Dean's Council. According to the Complaint, Dr. Burch-Windrem "had

9  supervisory authority over Defendant Haney, the process used to discipline Dr.

10 Moon, and the process for ending her employment at ESFCOM." *Id.* at ¶ 43.

11     The Complaint alleges the associate dean of student affairs receives reports

12 of disciplinary actions and is responsible for sharing "the status of [an]

13 investigation with the student throughout the process." *Id.* at ¶ 140. Dr. Moon has

14 filed documentation showing Dr. Haney shared his written student investigation

15 report with Dr. Burch-Windrem.

16     The foregoing is sufficient to state a claim against Dr. Burch-Windrem. Dr.

17 Burch-Windrem's role as Assistant Dean for Student Affairs indicates she would

18 have been involved in the student mistreatment investigation report prepared by

19 Dr. Haney. Her actual involvement is further supported by the documentation that

20 Dr. Haney shared his on-going plan for remediating Dr. Moon's classroom conduct

with Dr. Burch-Windrem. The Complaint's additional allegations that Dr. Burch-Windrem had supervisory authority over Dr. Haney and failed to take corrective action are sufficient to state a claim under § 1983.

### Defendant Ken Roberts

Dr. Ken Roberts was the Department Chair of Translational Medicine and Physiology and Interim Associate Dean for Clinical Education. According to the Complaint, Dr. Roberts "had supervisory authority over Defendant Haney, the process used to discipline Dr. Moon, and the process for ending her employment at ESFCOM." *Id.* at ¶ 43.

The Complaint alleges Dr. Moon appealed Dr. Haney's actions to Dr. Roberts in July of 2021. According to the Complaint, Dr. Roberts "agreed [Dr. Moon] had been wronged but the only solution he offered was that she quit." *Id.* at ¶ 182.

The Complaint's allegations against Dr. Roberts survive for the same reasons as those against Dr. Chermack.

***

As set forth above, the Complaint contains sufficient allegations against Drs. Tomkowiak, Cooper, Chermak, Burch-Windrem, and Roberts to state a claim under 42 U.S.C. § 1983. The allegations against Drs. Shultz, Dewald, and Nandagopal are insufficient to support personal participation, as required by §

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 21

1   1983.

2       In addition to arguing lack of personal participation, WSU also maintains the

3   Complaint must be dismissed on the basis of qualified immunity. However, the

4   arguments in support of qualified immunity set forth in WSU's opening brief rely

5   on its claims regarding lack of personal participation. Because the Court has found

6   sufficient individual supervisory action to tie Drs. Tomkowiak, Cooper, Chermak,

7   Burch-Windrem, and Roberts to the actions taken by Drs. Haney and/or Record,

8   WSU's arguments in support of qualified immunity fail at this point in the

9   proceedings. Whether the five remaining defendants are entitled to qualified

10  immunity implicates the analysis of whether qualified immunity might protect Drs.

11  Haney and Record. The parties have not briefed this issue. Presumably, this is a

12  matter that can be resolved only on summary judgment or at trial. Accordingly, the

13  Court declines to decide whether qualified immunity applies to Drs. Tomkowiak,

14  Cooper, Chermak, Burch-Windrem, and Roberts at this stage in the litigation.

15      WSU additionally argues the Court should dismiss the claims against the

16  moving defendants in their official capacities. Dr. Moon concurs agrees with this

17  request. Given the parties' agreement, the Court grants Defendants' request to

18

19

20

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 22

dismiss the claims against Drs. Cooper, Burch-Windrem, and Roberts in their official capacities.[1]

## 2. State Constitutional Claim

WSU moves to dismiss Dr. Moon's claims under the Washington Constitution, arguing the state constitution does not support a private cause of action akin to 42 U.S.C. § 1983. *See Blinka v. Wash. State Bar Ass'n*, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001). Dr. Moon has not responded to this request. The Court therefore deems Dr. Moon's claim under the Washington constitution abandoned, at least as to the moving Defendants.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss, **ECF No. 14**, is **GRANTED in part** and **DENIED in part**.

2. Claims 1-8 (alleging violations of 42 U.S.C. § 1983) against the following Defendants are **DISMISSED** in their entirety: Kirk Schultz, Darryl Dewald, and Radha Nandagopal.

---

[1] Defendants Tomkowiak and Chermak were sued only in their individual capacities.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 23

3.  Claims 2, 3, 5, 6 and 7 (alleging violations of 42 U.S.C. § 1983) against the following Defendants in their official capacities are **DISMISSED**: Dawn Cooper, Lisa Burch-Windrem, and Ken Roberts.

4.  Claim 9 (alleging a violation of Article I, Section 5 of the Washington State Constitution) against the moving defendants (Kirk Schulz, Daryll Dewald, John Tomkowiak, Dawn Cooper, Radha Nandagopal, Gail Chermak, Lisa Burch-Windrem, and Ken Roberts) is **DISMISSED**.

5.  Nothing in this Order prohibits Plaintiff from seeking leave to amend the Complaint under FRCP 15(a)(2).

**IT IS SO ORDERED.**

The District Court Executive is directed to enter this Order and forward copies to the parties.

DATED March 12, 2025.

_____
Rebecca L. Pennell
United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DISMISS ~ 24